















JAH    12/5/05    14:09

3:05-CV-00104   HUBBARD V. YARDAGE TOWN INC

*43*

*RR.*

FILED

05 DEC -2 PM 1:44

CLERK US DISTRICT COURT

_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN J. HUBBARD and BARBARA J. HUBBARD,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>YARDAGE TOWN, INC. dba YARDAGE TOWN; STANCIL G. JONES,<br><br>　　　　　　　　Defendants.<br>_____ | Case No. 05cv0104 IEG (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT [Doc. Nos. 23, 26]**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND DEFENDANT STANCIL JONES' MOTIONS FOR SANCTIONS [Doc. Nos. 23, 26]** |
| YARDAGE TOWN, INC.,<br><br>　　　　　　　　Cross-Claimant,<br>v.<br><br>STANCIL JONES,<br>　　　　　　　　Cross-Defendant.<br>_____ | |

On June 21, 2005, the Court conducted a Settlement Conference during which the parties settled their dispute. The terms of the settlement were stated on the record and all of the parties verbally agreed to the stated terms. Plaintiffs Lynn and Barbara Hubbard ("Plaintiffs") subsequently notified the court that Defendant Yardage Town Inc. ("Defendant Yardage Town") was not complying with the terms of the settlement and requested a hearing. The Court set a Settlement

43

1  Disposition Conference for August 5, 2005.

2  On August 5, 2005 at the Settlement Disposition Conference,
3  Plaintiffs and Defendant Stancil Jones ("Defendant Jones") advised the
4  Court that defendant Yardage Town had violated the terms of the
5  settlement by refusing to pay Plaintiffs the full settlement amount.
6  Transcript of Settlement Disposition Conference at 10-11, 14
7  (hereinafter "SDC Transcript").   Pursuant to a special briefing
8  schedule, on August 19, 2005, Plaintiffs and Defendant Jones filed
9  motions to enforce the settlement and for monetary sanctions against
10 David Peters, counsel for Defendant Yardage Town.  As an additional
11 sanction, Plaintiffs moved to have Mr. Peters declared a vexatious
12 litigant. Doc. Nos. 23-30. Defendant Yardage Town and Mr. Peters filed
13 an untimely opposition, which the Court accepted on September 7, 2005.
14 Doc. Nos. 31-35. On September 15, 2005, Plaintiffs and Defendant Jones
15 filed a reply [Doc. Nos. 37-38] and the Court took the matter under
16 submission pursuant to Civil Local Rule 7.1(d)(1).   Doc. No. 36.

17 On October 31, 2005, Defendant Yardage Town filed a Request for
18 Judicial Notice.  Doc. No. 41.  On November 15, 2005, Plaintiffs filed
19 a Response to Defendant's Supplemental Evidence.  Doc. No. 42.

20 For the reasons set forth herein, this Court **RECOMMENDS** that
21 Plaintiffs' and Defendant Jones' motion to enforce the settlement be
22 **GRANTED**.   Furthermore, for the reasons set forth below, this Court
23 **GRANTS IN PART AND DENIES IN PART** Plaintiffs' and Defendant Jones'
24 motion for sanctions.

25 I

26 **FACTUAL BACKGROUND**

27 Plaintiffs allege in their complaint that they are disabled within
28 the meaning of the American with Disabilities Act ("ADA").  They claim

2

that prior to January 17, 2005 they experienced difficulty in accessing a Yardage Town store due to numerous ADA violations on the premise, partially owned by Defendant Jones.  Complaint at 3.  Plaintiffs sought injunctive relief under California Civil Code Section 52, 55 and the ADA.  Plaintiffs also sought statutory monetary damages under California Civil Code Section 52(a) or 54.3 and attorneys' fees.  Complaint at 9-10.

## II

### SETTLEMENT HISTORY

On April 11, 2005, Plaintiffs notified the Court that the parties had settled the case on their own.  As a result, the Court vacated the Early Neutral Evaluation Conference and set a Settlement Disposition Conference. Doc. No. 11.  On May 17, 2005, Plaintiffs advised the Court that the parties were unable to finalize the terms of the settlement or fully execute the written settlement agreement.  In response, the Court vacated the Settlement Disposition Conference and scheduled a Settlement Conference. Doc. No. 13.

On June 21, 2005, the Court conducted a Settlement Conference.  The parties reached a settlement during this proceeding and the terms of the settlement were recorded.  Transcript of the Settlement Conference ("SC Transcript).  As part of the settlement, Defendant Yardage Town agreed to pay $3,000 and Defendant Jones agreed to pay an additional $2,000 to Plaintiffs.  Id. at 4-5. At the conclusion of the hearing, the parties confirmed on the record that they understood and agreed to the settlement terms.  Id. at 9-10.  The parties, including the Yardage Town representative, subsequently signed a written settlement agreement.[1]

---

[1]    None of the parties dispute that the written settlement agreement was signed by all parties and all counsel except Mr. Peters.  However, the only copy

1 Declaration of Lynn Hubbard in Support of Plaintiffs' Motion to Enforce
2 Settlement, and for Sanctions ("Hubbard Decl."), Exh. E.

3     On July 1, 2005, Mr. Peters apparently sent Plaintiffs a check for
4 $1,320, rather than the agreed-upon $3,000, and advised that he would
5 not provide the rest of the settlement money unless and until Plaintiffs
6 executed a W-9 form.  Hubbard Decl. at 3.  The parties exchanged letters
7 in an effort to resolve this impasse but were unsuccessful.  On July 13,
8 2005, Plaintiffs advised the Court that they were unable to finalize the
9 settlement documents.  As a result the Court scheduled a Settlement
10 Disposition Conference for August 5, 2005.

11     On August 5, 2005, Defendant Yardage Town and Mr. Peters argued
12 that they could not legally comply with the settlement because the
13 terms, which they had agreed to during the settlement conference,
14 violated the law.  The Court advised counsel that Defendant Yardage Town
15 and Mr. Peters were violating the terms of the settlement and that Mr.
16 Peters appeared to be doing so in violation of his client's desires and
17 without supporting legal authority.  The Court permitted Plaintiffs and
18 Defendant Jones to file motions relating to Mr. Peters' and Defendant
19 Yardage Town's conduct.

20 **A.**   **The Settlement Conference**

21     On June 21, 2005, the Court conducted a settlement conference.
22 Lynn Hubbard, III appeared with his clients, Plaintiffs Lynn J. and
23 Barbara J. Hubbard.  Robert Walters and Dan Buoye appeared for Defendant
24 Jones.  Mr. Buoye was the property and business manager for Defendant

25

26 submitted to the court contains only the signatures of Plaintiffs, Mr. and Mrs.
Hubbard, Plaintiffs' counsel, Lynn Hubbard, and someone (apparently Dean Goldman) on
27 behalf of Defendant Yardage Town.  Hubbard Decl., Exh. E.  On the submitted document,
28 the signature line for David Peters, attorney for Defendant Yardage Town, was crossed
out.  <u>Id.</u>

1  Jones and stated that he had full settlement authority.   David Peters
2  and Dean Goldman appeared for Defendant Yardage Town.   Mr. Goldman
3  stated that he was Defendant Yardage Town's secretary and that he had
4  full settlement authority.  SC Transcript at 1-3.  The parties settled
5  this case during this conference.   The terms of the settlement were
6  placed on the record.

7       Initially, the Court advised the parties that they should listen
8  carefully to the statement of the settlement terms because if all of the
9  parties  agreed  on  the  record  to  the  settlement  terms,  then  the
10 settlement as stated would be binding.  Id. at 2.  The clients confirmed
11 that they understood that the settlement would.be binding.  Id. at 2-3.
12 Mr. Hubbard then stated the terms of the settlement:

13        HUBBARD: Yes.   Your Honor, as to Defendant, Stancil Jones and
          Yardage Town, they are going to evaluate their facility and make
14        the necessary changes, that are readily achievable, to bring up to
          the ADAG (phonetic) and California Title 24 standards within 24
15        months.  In addition, they are going to pay a total sum of $14,000,
          which will compensate the Plaintiffs for any and all damages.
16
          The Court: All right.
17
          HUBBARD: I probably should put on the record that the Plaintiffs
18        have  already  reviewed  the  document  that  was  signed  today  by
          Yardage Town and approved as the form, as has my office and has Mr.
19        Jones and attorney Robert Walters.

20        The Court: All right.  And when you talk of "that document" that's
          the settlement agreement?
21
          HUBBARD: That is the settlement agreement.
22
   Id. at 3-4.
23
24      Mr. Walters stated that he agreed with the settlement terms as
25 stated by Mr. Hubbard with a few additions.   Id. at 4.   He then
   clarified several terms including that Defendant Jones and another
26
   defendant, K&K Lumber Corporation, already had paid $9,000 to Plaintiffs
27
   so to reach the $14,000 figure stated by Mr. Hubbard, Defendant Jones
28
   and Defendant Yardage Town only had to pay an additional $5,000.  Id. at

                                     5                              05cv0104

4-5.  Mr. Walters stated that as part of this additional settlement, Defendant Jones was going to pay an additional $2,000 and Defendant Yardage Town was going to pay $3,000.  Id. at 5.  Mr. Hubbard confirmed that clarification and that the settlement figure included all attorney's fees to date.  Id. at 5-6.

The Court then asked Mr. Peters if he agreed with the stated settlement terms.  Id. at 6.  Mr. Peters replied as follows:

> PETERS: I agree with that.  I object to the form and content of the document.
>
> The Court: What do you mean by that, sir?
>
> PETERS: In my opinion, it doesn't appear to comply with the clerk [sic] of the law, therefore I cannot endorse it, as attorney for Yardage Town, but I am here representing Yardage Town in other capacities.
>
> The Court: Have you made your concerns known to your client?
>
> PETERS: Yes, I have, your Honor.
>
> The Court: And, is your client – still want to go forward with the settlement?
>
> PETERS: Under protest and with no other option, my client is willing to proceed.
>
> The Court: Okay, well, it's not - he does have other options, Counsel.
>
> PETERS: I understand.
>
> The Court: I think you're aware of that.  So, is it your understanding that your client wishes to go forward, having been advised of your concerns, with regard to the settlement agreement?
>
> PETERS: That is my understanding, your Honor.
>
> The Court: Do you have - you have stated your objection to the settlement agreement.  Do you disagree with the terms, as stated by the  - the two attorneys before you?
>
> PETERS: I do not disagree with their characterization.  Although I would think the written document would govern if there was any disparity between their description of it and the actual document itself.
>
> The Court: Okay.

PETERS: And, I would also confirm that it's a document of – how many pages, Bob? A total of?

WALTERS: Eight pages.

PETERS: Eight pages.

The Court: Okay. So there is an eight page document. I would again note for the record that the other two parties will [sic] willing to proceed forward just on the written document and it was you, Counsel, that was unwilling to go forward just on the written document, and required this to be put on the record. So, do all – do the other two attorneys agree that this document – the title of it, Counsel?

WALTERS: "Settlement Agreement and Release in Full."

The Court: But that is the document that is binding in this case if there's a dispute among the parties. Do you agree to that, Mr. Hubbard?

HUBBARD: I do.

The Court: Mr. Peters?

PETERS: I do.

The Court: I'm sorry, and, Mr. Walters?

WALTERS: I do.

Id. at 6-8.

The Court then asked the parties if they understood the terms of the settlement and if each agreed to be bound by them. All of the parties replied affirmatively. Id. at 9-10. The Court specifically asked Defendant Yardage Town's representative, Mr. Goldman, if he understood that his "attorney disagrees with the language of the settlement and has recommended to you that you not enter into this agreement." Id. at 10. Mr. Goldman confirmed that he understood his attorney's objection and stated that he still wanted to settle the case on the stated terms. Id. The settlement agreement was then finalized. Hubbard Decl., Exh. E; Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Enforce Settlement, and for Sanctions ("Plaintiffs' Memo."), p. 6; Memorandum of Points and Authorities in

7

Support of Defendant/Cross-Defendant Stancil Defendant Jones' Motion for Sanctions ("Jones' Memo."), p. 2.

**B.    Written Settlement Agreement**

The written settlement agreement clearly states that "[t]he Settlement Payment shall be made payable to the Law Offices of Lynn Hubbard Trust Account (Federal Taxpayer Identification Number XXXXX[2]) and tendered to the Law Offices of Lynn Hubbard within ten (10) days from the date Plaintiff executes this Agreement."   Hubbard Decl., Exh. E, 2.1.   The parties further stipulate that "Plaintiff takes complete responsibility for any tax liability from the receipt of any settlement monies under this Agreement.   An IRS 1099-MISC will be issued to the Law Offices of Lynn Hubbard for the payments contained in paragraph 2.1." Id. at 2.2.

**C.    Settlement Disposition Conference**

Prior to the Settlement Disposition Conference, Plaintiffs advised the Court that Defendant Yardage Town was unwilling to pay the entire $3,000 to Plaintiffs.   During the conference, the Court asked Mr. Peters to explain the situation.   Mr. Peters acknowledged that the settlement agreement required Defendant Yardage Town to pay $3,000 to Plaintiffs and that his client had given him the entire $3,000.   SDC Transcript at 2, 4, 18-20.   However, Mr. Peters argued that he had consulted numerous authorities[3] and that settlement payments must be made to both the attorney and the Plaintiffs and that, since Plaintiffs were unwilling to

---

[2]    The actual taxpayer identification number is provided in the settlement agreement but, for privacy reasons, the Court declines to include it in this order.

[3]    Counsel represented that he had  spoken with two IRS attorneys, an IRS agent, and a tax attorney, and consulted a tax web site.   SDC Transcript at 3. However, Mr. Peters never provides the court with a declaration or affidavit from any tax authority supporting or justifying his position or arguments.

05cv0104

1  provide their individual social security numbers, he could not pay the
2  full amount.  Id. at 2-6.  When questioned, Mr. Peters stated that he
3  had not discussed with his client, Mr. Goldman, his decision not to pay
4  Plaintiffs the full settlement amount.  Id. at 5.  Mr. Peters stated
5  that he had "discussed it briefly" with another client representative,
6  Mr. Recht, but that it was Mr. Peter's opinion that the law required him
7  to withhold the money so he did not need his client's approval.  Id. at
8  5-7, 16-17.  Mr. Goldman then confirmed that it was his intention to
9  settle the case in accordance with the settlement agreement, which
10 required the money to be paid to Plaintiffs and acknowledged that any
11 tax liabilities were the sole responsibility of Plaintiffs.  Id. at 5-8.
12 Mr. Goldman also confirmed that Mr. Peters' reservations or concerns
13 about the tax consequences had been raised at the settlement conference
14 and that Mr. Goldman entered into the settlement agreement anyhow,
15 intending to settle the case in accordance with the written and verbal
16 settlement agreement.  Id.  Mr. Peters reiterated that it was his belief
17 that the IRS law required him to withhold money from the payment and
18 that otherwise his client could face "penalties, including felonies and
19 misdemeanors."   Id. at 9.   However, Mr. Peters admitted that he
20 currently did not have an IRS opinion or other legal authority
21 supporting his position, nor did he have such opinion at the time he
22 made the decision to withhold the money.  Id. at 7-11.

23     Mr. Walters then expressed his outrage at the way Mr. Peters had
24 handled this case and explained the additional costs that his client had
25 incurred as a result of Mr. Peters' conduct.  Id. at 11-15.

26                                III

27                            **DISCUSSION**

28     Plaintiffs and Defendant Jones move to enforce the settlement

                                  9                          05cv0104

agreement, arguing that all of the parties, including Defendant Yardage Town, entered into a valid settlement agreement and that Mr. Peters, apparently without Defendant Yardage Town's knowledge or consent, refused to honor the terms of that settlement.   Plaintiffs' Memo. at 4-12; Jones' Memo. at 1-6.

Mr. Peters and Defendant Yardage Town argue that they did not breach the terms of the settlement agreement because the law required them to withhold 28% of the settlement when the individual Hubbards failed to provide Defendant Yardage Town with their social security numbers in accordance with the W-9 forms provided to Plaintiffs by Mr. Peters.   Opposition of Defendant Yardage Town to Motions for Sanctions and to Enforce Settlement Agreement ("Opposition").   While counsel implicitly acknowledges that the settlement agreement required Yardage Town to pay the full $3,000 to the Hubbard Law Firm and to issue a 1099-MISC, counsel argues that his interpretation of the law prohibits him from complying with those provisions.[4]   Id.

Plaintiffs and Defendant Jones also move for sanctions based on Mr. Peters' conduct relating to the settlement in this case.   The moving parties argue that they incurred significant additional expenses as a result of Mr. Peters' refusal to comply with the settlement terms.   The parties point out that Mr. Peters has failed to provide any law supporting his position and has failed to provide any evidence proving

---

[4]     Mr. Peters claims that because the payment did not fall into one of the exceptions, e.g. personal injury, under IRC § 61 and § 62, "income from all sources is taxable and must be reported."  Opposition at 6.  Mr. Peters claims that the mere fact that Plaintiffs are asking for compensation for personal injuries is not wholly determinative of the characterization of payment.  Id. Thus, Mr. Peters believes it is his duty to withhold 28 percent of the payment and report it to the IRS.  Id. at 5-7.

1  that his client supported his conduct.  Plaintiffs' Memo at 6-12; Jones'

2  Memo at 2-4; Plaintiffs' Reply in Support of Plaintiffs' Motion to

3  Enforce Settlement, and for Sanctions ("Plaintiffs' Reply") at 4-5;

4  Reply to Opposition of Defendant/Cross-Complainant Yardage Town, Inc.,

5  to Defendant/Cross-Defendant Stancil Jones' Motion for Sanctions ("Jones

6  Reply") at 2-4.   While Mr. Peters does not directly oppose either

7  party's motion, he implicitly argues that he has not done anything wrong

8  so sanctions would be inappropriate.  Opposition at 2-30.

9      Finally, as an additional sanction, Plaintiffs move to have Mr.

10  Peters declared a vexatious litigant.   Again, Mr. Peters does not

11  directly oppose this motion but merely argues that everything he did was

12  proper and that Mr. Hubbard was the attorney acting inappropriately.

13  Id.

14  **A.   Motion to Enforce Settlement**

15      Plaintiffs  and  Defendant  Jones  seek  an  order  enforcing  the

16  settlement. Settlement enforcement is appropriate under the court's

17  inherent powers.   In re City Equities Anaheim, Ltd., 22 F.3d 954, 957

18  (9th Cir. 1994); Doi v. Halekulani Corporation, 276 F.3d 1131, 1136-38

19  (9th Cir. 2002).   In order for a settlement agreement to be enforced it

20  must meet two elements. Marks-Foreman v. Reporter Pub. Co., 12 F. Supp.

21  1089, 1092 (S.D. Cal. 1998).   First, the settlement agreement must be

22  complete.   Id. citing Maynard v. City of San Jose, 37 F.3d 1396, 1401

23  (9th Cir.  1994); Doi, 276 F.3d at 1137.   Second, the settlement

24  agreement  must  be  the  result  of  the  parties  or  their  authorized

25  representatives  agreeing  upon  the  terms  of  the  settlement.    Marks-

26  Foreman, 12 F. Supp. at 1092 citing Harrop v. Western Airlines, Inc.,

27  550 F.2d 1143, 1144-45 (9th Cir. 1977); Doi, 276 F.3d at 1137-38.   When

28  an objection to a settlement term is raised after a settlement is agreed

1  upon by the parties, the court may rightfully deny such objections.

2  Harrop, 550 F.2d at 1144.

3      Here, the challenged settlement satisfies both elements.  First,

4  the settlement agreement was complete.  The parties stated the terms of

5  the settlement on the record after the court-conducted settlement

6  conference.  SC Transcript at 3-8.  Moreover, there is a written

7  settlement agreement allegedly signed by all parties and counsel, except

8  Mr. Peters, and the copy provided to the Court clearly establishes that

9  Defendant Yardage Town and Plaintiffs signed the agreement.[5]  Hubbard

10  Decl., Exh. E.  In addition, Mr. Peters specifically stated that the

11  written settlement agreement would control any disputes between the

12  parties as to the settlement terms.  SC Transcript at 7.  Both the

13  written settlement agreement and the verbal recitation of the settlement

14  set forth all of the material terms of the settlement.  Accordingly, the

15  first element, a complete settlement agreement, is satisfied.

16      The second element requires that the settlement be the result of an

17  agreement by the parties or their authorized representatives.  In this

18  case, the parties did reach an agreement on the terms of the settlement.

19  First and foremost, the terms of the agreement are set forth in the

20  written settlement agreement, signed by Defendant Yardage Town's

21  authorized representative, Mr. Goldman.  Hubbard Decl., Exh. E.  Second,

22  the essential terms were placed on the record at the conclusion of the

23  settlement conference and Defendant Yardage Town's authorized

24  representative agreed.  SC Transcript at 8.  Third, Defendant Yardage

25  Town's agreement was voluntary and knowing.  Mr. Peters advised his

26  client of his concerns regarding the form and language of the settlement

27

28      [5]      See footnote 1 for explanation regarding the signatures on the settlement
agreement.

12                                    05cv0104

agreement before the case was settled.   SC Transcript at 6-7; SDC
Transcript at 17-20.    Mr. Goldman, Defendant Yardage Town's
representative, confirmed on the record that counsel had advised him not
to sign the settlement agreement but that he wanted to settle the case
and was going to execute the settlement agreement, agreeing to the
disputed terms, despite counsel's advice.   SC Transcript at 10; SDC
Transcript at 6-7.   Accordingly, the undisputed evidence establishes
that Defendant Yardage Town knowingly and voluntarily agreed to the
settlement terms.

The facts of this case clearly establish that the parties
(Plaintiffs, Yardage Town and Jones) reached an enforceable settlement
agreement and that Mr. Peters independently breached the agreement.   In
his opposition, Mr. Peters never addresses the fact that the parties had
agreed to settlement terms or the standard for enforcing a settlement
agreement.   Rather, Mr. Peters merely reargues his position that public
policy and IRS tax law require him to withhold the money and that the
Hubbards engage in unfair, extortionate litigation.   Opposition at 3-30.
This is insufficient.   First, Mr. Peters has not provided binding, or
even persuasive, authority that he is "required" to withhold the money.
Second, Mr. Peters took the contested action without discussing it with
his client or obtaining his client's authorization, even though he knew
that his client previously had chosen to disregard his advice and enter
into the settlement.

During the settlement conference, Mr. Peters stated that he
objected to the form and content of the agreement but he did not provide
any authority for his position.   SC Transcript at 6.   During the
Settlement Disposition Conference, Mr. Peters stated that he had spoken
with several IRS attorneys and opined that they would support his

position.  SDC Transcript at 3.  However, Mr. Peters did not provide a declaration or other statement from an IRS attorney.  Mr. Peters explained that he expected to receive such a letter on August 26, 2005. Id.  In his opposition filed on September 2, 2005, Mr. Peters again failed to provide the anticipated IRS letter, upon which he allegedly premised his decision not to comply with the settlement terms.  Finally, on October 31, 2005, Mr. Peters filed a request for judicial notice attaching several documents including a letter from the IRS.  Request by Defendant Yardage Town for Judicial Notice ("Request"), Exh. A. Notably, this letter does not fulfill any of the predictions made by Mr. Peters.  The letter merely sets forth general rules governing what constitutes gross income and the taxpayer's responsibilities regarding reporting gross income.  Id.  The letter specifically states "[w]hether a recovery under the ADA is excludable from gross income under § 104(a)(2) of the code is beyond the scope of this letter."  Id.  The letter also provides general information regarding reporting requirements.  Id.  The letter does not, however, address the reporting or withholding obligations of a defendant who is paying money to a plaintiff to settle a case.  Id.  The letter, while interesting and informative, does not support Mr. Peters' novel idea that he was required to breach the settlement agreement and withhold 28% of the settlement payment in the instant factual situation.  Id.

In his pleadings and oral argument, Mr. Peters argued that Commissioner of Internal Revenue v. Banks, 125 S. Ct. 826 (2005), mandated the withholding.  Counsel is wrong.  In Banks, the Supreme Court held that a taxpayer must include in his gross income, the portion of a taxable recovery that the taxpayer paid to his attorney as part of a contingent fee arrangement.  Id. at 831-34.  However, Banks does not

14

1   address the obligations of the party who paid the litigation settlement.

2   Id.  As set forth in the IRS letter submitted by Mr. Peters,

> [w]hether settlement proceeds are excludable from gross income
> as damages received on account of personal injuries or
> physical sickness is, in part, a factual question.  In
> reaching this determination, courts look at the settlement
> agreement in light of all the surrounding circumstances.
> Neither the courts nor the Commissioner are bound by the terms
> of a settlement agreement between third parties that is not
> the result of good faith, adversarial, arms-length
> negotiations.  A court may look at the allegations of the
> complaint to determine whether the claims to which the
> proceeds are allocated in the settlement agreement are claims
> for personal physical injuries or physical sickness.  The mere
> mention of "personal physical injuries" in a complaint does
> not, by itself, serve to bring a recovery within the
> exclusion.

11  Request at Exh. A, p.2.  The IRS continued that "[w]hether a recovery

12  under the ADA is excludable from gross income under § 104(a)(2) of the

13  code is beyond the scope of this letter[.]"  Id.  Neither Banks nor the

14  IRS informational letter submitted by Mr. Peters justifies Mr. Peters'

15  argument that he was required to withhold 28% of the settlement figure.

16  Accordingly, this Court finds that Mr. Peters did not have a legal

17  obligation to withhold part of the settlement payment.

18      Second, Mr. Peters withheld a portion of the settlement proceeds in

19  violation of his client's wishes.  During the settlement conference, Mr.

20  Peters explained his concerns regarding the form of the settlement to

21  his client.  At the conclusion of the conference, when the terms were

22  stated on the record, Mr. Peters again voiced his concerns as to the

23  "form and content" of the settlement agreement.  SC Transcript at 6.

24  The Yardage Town representative, Dean Goldman, stated that he understood

25  his attorney's concerns and advice not to settle but wanted to settle in

26  accordance with the settlement agreement anyhow.  Id. at 6-8.  Mr.

27  Goldman signed the written settlement agreement.  Hubbard Decl. at Exh.

28  E.  After the settlement conference, Defendant Yardage Town forwarded

15

1 the full $3,000 to Mr. Peters with the expectation that the money would

2 be paid to Plaintiffs.  SDC Transcript at 6-7.

3      During  the  Settlement  Disposition  Conference,  Mr.  Peters

4 acknowledged that his client had given him the entire $3,000 payment and

5 that he independently decided to withhold the money.  Id. at 20.  Mr.

6 Peters admitted that he had not discussed this tactic with Mr. Goldman,

7 the  Yardage  Town  representative  who  attended  both  the  Settlement

8 Conference and the Settlement Disposition Conference.  Id. at 5.  Mr.

9 Peters asserted that he had "discussed it briefly" with another client

10 representative,  Mr.  Recht.   Id.   However,  in  his  Opposition  and

11 supplemental briefing, Mr. Peters did not provide a declaration from Mr.

12 Recht, or any other Yardage Town representative, stating that he or she

13 authorized Mr. Peters to violate the terms of the settlement agreement

14 and withhold a portion of the $3,000 settlement payment.

15      For the reasons set forth above, the Court finds that there was a

16 valid and enforceable settlement reached by the parties and that one

17 provision required Defendant Yardage Town to pay $3,000 to Plaintiffs

18 using their lawyer's trust account tax ID number.  Hubbard Decl., Exh.

19 E; see Doi, 276 F.3d at 1137-38 (finding a binding settlement agreement

20 where terms of agreement were placed on the record and the party replied

21 "yeah" when asked if she agreed with the terms).  The Court further

22 finds that Mr. Peters, counsel for Defendant Yardage Town, chose to

23 violate material terms of the settlement by refusing to forward to

24 Plaintiffs the full settlement payment made by his client.  The Court

25 concludes  that  counsel  took  this  action  without  his  client's

26 authorization and in violation of the client's expectation that the full

27 $3,000 would be paid to Plaintiffs.  The Court also determines that Mr.

28 Peters  took  this  action  despite  his  knowledge  that  his  client  had

05cv0104

rejected his concerns and recommendation and had explicitly agreed to the settlement.  Finally, the Court finds that since Mr. Peters did not have at the time of the settlement, at the time of the withholding, or at the time of any of the relevant court proceedings an opinion or other legal document mandating his position, Mr. Peters did not have a legal or factual basis for his conduct in violating the settlement.[6]

Accordingly, this Court **RECOMMENDS** that Plaintiffs' and Defendant Jones' motion to enforce the settlement be **GRANTED**.

**B.    Sanctions**

A court has the power to issue sanctions under Rule 11 of the Federal Rules of Civil Procedure, Title 28 U.S.C. § 1927, and its inherent authority.

Rule 11(b) says:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonably under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the

---

[6]    For the reasons set forth above, the Court also finds that the IRS opinion letter submitted by Mr. Peters does not justify his conduct. However, for purposes of this motion, the Court focuses on the fact that Mr. Peters chose to violate the terms of the settlement without any factual or legal basis; he merely had his belief (or hope) that the IRS would supply such support. This is insufficient.

17

evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

Case law has established that sanctions must be imposed if the pleading or other paper is (a) filed for an improper purpose or (b) is "frivolous." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990). Rule 11 standards of improper purpose and frivolousness should be viewed in light of an objective standard. Id. The court can impose sanctions for frivolousness if the filing is both "baseless" and made "without reasonable and competent inquiry." Id.; In re: Keegan Mgmt. Co., Securities Litig., 78 F.3d 431, 434 (9th Cir. 1996). Finally, Rule 11 does not require a finding of bad faith. Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991). Rule 11(c) allows for "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation" as requested in a motion. Fed. R. Civ. P. 11(c)(2); Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998).

Section 1927 provides that "[a]ny attorney ... who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 sanctions must be supported by a "finding of subjective bad faith." New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989). The bad faith element is satisfied when an "attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1528 (9th Cir. 1990).

Finally, the court also may issue sanctions under its own inherent

05cv0104

power.   District courts have inherent power to impose sanctions even where the bad faith conduct also may be sanctioned under statutes or rules.   Chambers, 501 U.S. at 45.   These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."   Id.   When the court imposes sanctions under its inherent power, there must be some showing that the party acted willfully or in bad faith.   Id. at 43.

The court's inherent power also includes imposing the less-severe sanction of assessment of attorneys' fees.   Id. at 45.   The court may assess attorneys' fees in three cases (1) "the common fund exception" where litigation directly benefits others (2) "willful disobedience of a court order" and (3) when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."   Id. at 45-46 quoting Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975). The third case, the bad-faith exception, resembles Rule 11's certification requirement, which requires a signer of a paper to ensure that the paper is not for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.   Id. at 46.

Plaintiffs and Defendant Jones request sanctions based on Mr. Peters' repeated and unjustified interference with the parties' efforts to finalize the settlement.   Plaintiffs request sanctions under § 1927 and the court's inherent authority and Defendant Jones requests sanctions under Rule 11(b) and (c).   Each party requests sanctions in the amount of fees and costs the party incurred while attempting to force Mr. Peters to comply with the terms of the settlement.   Jones Memo. at 5; Plaintiffs' Memo. at 13-14.

19

Here, the Court finds that the imposition of sanctions against Mr. Peters and in favor of both Plaintiffs and Defendant Jones is appropriate under all three legal authorities because Mr. Peters acted intentionally, in bad faith, for an improper purpose, and with an intent harass the Plaintiffs. Moreover, Mr. Peters' settlement withholding and legal papers, pleadings and arguments are without legal foundation or merit and he unreasonably and vexatiously multiplied the litigation, which resulted in excess costs, expenses, and attorneys' fees to the other litigants. As discussed at length above, Mr. Peters knew that his client had chosen to disregard his advice and enter into the settlement which required Defendant Yardage Town to pay $3000 to Plaintiffs, regardless of any potential tax concerns. Despite this knowledge, Mr. Peters, without his client's consent or even knowledge, decided not to comply with the valid settlement. Mr. Peters attempts to argue that he was "required" to take the disputed conduct. However, the "law" that he cites in support of his position was not available to him at the time he made his decision to violate the settlement terms or at the time of the settlement disposition conference. Moreover, the IRS opinion letter ultimately submitted did not live up to Mr. Peters' representations and did not support his arguments of conduct. Mr. Peters chose to violate the valid settlement, requiring the parties to engage in extended, expensive and unnecessary litigation, without his client's knowledge and without legal justification. This is the essence of frivolous and bad faith litigation and the imposition of sanctions against Mr. Peters is warranted.

Mr. Peters argues that he was required to engage in the disputed conduct. However, his opposition brief is very revealing. First, Mr. Peters never addresses the fact that his client agreed to the settlement

terms.   Rather, Mr. Peters reargues the inequities in the instant case and again asserts that the Plaintiffs and Plaintiffs' counsel are frequent litigators who need to be stopped.[7]   While this issue may properly be raised in another forum or case, it is not relevant to the instant situation, where Defendant Yardage Town voluntarily and knowingly entered into the settlement.   Second, Mr. Peters argues that he was required to withhold the money but he never provided legal authority for his position.   Mr. Peters repeatedly stated that he had spoken with an IRS chief and tax lawyer who advised him that his position was correct.   However, he never provided an affidavit from these individuals.   Moreover, the IRS letter, which Mr. Peters' repeatedly said would prove his point, merely is a general opinion, not tailored in any way to the facts of this case.   And, significantly, it does not address the payer's withholding and reporting responsibilities and, therefore, is irrelevant to the instant dispute.

As set forth above, Mr. Peters acted with an improper purpose when he refused to forward all of the settlement money and vigorously litigated his right to do so.   The evidence also establishes that Mr. Peters unreasonably and vexatiously multiplied the court proceedings. Mr. Peters willfully and intentionally engaged in this inappropriate conduct in an effort to harass the Plaintiffs because he disapproves of

---

[7]   A review of Mr. Peters' oral arguments and his written submissions reveals that he routinely failed to address the relevant legal issues.   Rather, he repeatedly, and at length, restates and reargues his position that the Hubbards file numerous and frivolous lawsuits, that attorney Lynn Hubbard engages in unethical litigation tactics and that all of the Hubbards are engaged in a scheme to defraud the tax authorities. However, these issues, valid or not, are not relevant to the instant case.   In this case, the parties, including Mr. Peters' client, reached a settlement.   Mr. Peters responsibility was to support and advance his client's settlement desire, not his personal beliefs regarding ADA litigation.

their ADA litigation tactics. And, he engaged in this conduct without any legal basis for his arguments, just the unfounded anticipation of a supporting IRS opinion. The totality of the circumstances establishes bad faith, improper purpose and frivolousness. Sanctions against Mr. Peters are appropriate. See Doi, 176 F.3d at 1140 (affirming the imposition of sanctions where litigant refused to sign written settlement agreement after verbally settling case).

Plaintiffs request sanctions in the amount of $10,866.78. Plaintiffs' Memo. at 14; Hubbard Decl. at 8-11, Exhs. R and S. The requested sanction figure is based upon the additional expenses that Plaintiffs incurred after the June 21st settlement conference as a result of Mr. Peters' conduct. Id. The figure consists of $8,936.75 in attorney and staff hours and $1930.03 in other expenses. Id. The Court finds that the described work was reasonable and necessary, given Mr. Peters' conduct, and directly attributable to Mr. Peters' conduct.

Defendant Jones request sanctions in the amount of $4,280.00 for the additional work that Mr. Walters, counsel for Defendant Jones, had to perform as a result of Mr. Peters' conduct.[8] Jones' Memo. at 5-6. Defendant Jones is not requesting reimbursement for any expenses, just the billable hours for the work that Mr. Walters was required to perform as a result of Mr. Peters' refusal to comply with the settlement

---

[8]     Defendant Jones' memorandum describes the additional work that Mr. Walters was required to perform as a result of Mr. Peters' refusal to comply with the settlement agreement. Jones' Memo. at 5-6. The listed work totals $3,280.00.   Id. The Court assumes that the additional $1,000 requested is due to the work that Mr. Walters had to perform in preparing Defendant Jones' motions and reply. This amount is less than the amount requested by Plaintiffs for preparing their pleadings. Accordingly, the Court finds that the requested amount of $4,280.00 is reasonable and directly attributable to Mr. Peters' conduct.

agreement.  Id.  The Court finds that the described work was reasonable and necessary and directly attributable to Mr. Peters' actions.

Mr. Peters does not dispute the amount of the sanctions requested by the parties.  Opposition; Declaration of Attorney David Peters in Opposition to Motions for Sanctions by Plaintiffs and Defendant Jones.

For the reasons set forth above, the Court finds it appropriate to sanction Mr. Peters' for his frivolous litigation, for needlessly increasing the litigation costs, and for engaging in litigation in bad faith and for an improper purpose.  The Court sanctions Mr. Peters by requiring Mr. Peters to reimburse Plaintiffs' counsel and Defendant Jones' counsel for the additional costs they incurred in responding to Mr. Peters' refusal to comply with the settlement terms.  Mr. Peters is ordered to pay $10,866.78 to Mr. Lynn Hubbard and $4,280.00 to Mr. Walters.  Mr. Peters must transmit these funds to Mr. Hubbard and Mr. Walters by December 16, 2005 and must file a written declaration with the Court by December 23, 2005 confirming that the payments have been made.  Plaintiffs' and Defendant Jones' motions for monetary sanctions are **GRANTED**.

**C.   Vexatious Litigant**

As an additional sanction, Plaintiffs seek an order declaring Mr. Peters to be a vexatious litigant.   To declare someone a vexatious litigant, the court must evaluate both the "number of and content of the filings as indicia" as to the frivolousness of the claims.  De Long v. Hennessey, 912 F.2d 1144, 1148 (9th Cir. 1990).  However, an attorney appearing for and representing a client "cannot be sanctioned as a vexatious litigant; by definition, he or she is acting as an attorney and not a litigant." Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1197 (9th Cir. 1999).  Because Mr. Peters has appeared throughout these

1  proceedings as an attorney representing Defendant Yardage Town, not as
2  a litigant, he cannot be sanctioned as a vexatious litigant.   Id.
3  Accordingly, Plaintiffs' motion for sanctions that Mr. Peters be
4  declared a vexatious litigant is **DENIED**.

## CONCLUSION

6      As set forth above, Plaintiffs' and Defendant Jones' motions for
7  sanctions are **GRANTED IN PART AND DENIED IN PART**.   Their motions for
8  monetary sanctions are **GRANTED**.   Mr. Peters, counsel for Defendant
9  Yardage Town, is ordered to pay monetary sanctions to Plaintiffs'
10 counsel in the amount of $10,886.78 and to Defendant Jones' counsel in
11 the amount of $4280.00.  Mr. Peters is required to make these payments
12 so the money is received by counsel by the close of business on December
13 16, 2005.  By December 23, 2005, Mr. Peters is required to file a
14 declaration with the Court confirming that the required payments were
15 made, with a copy to be served on all counsel.

16     Plaintiffs' Motion to Sanction Mr. Peters as a vexatious litigant
17 is **DENIED**.

18     This Court **RECOMMENDS** that Plaintiffs' and Defendant Jones' Motions
19 to Enforce the Settlement be **GRANTED**.  If Defendant Yardage Town does
20 not file an objection to this Recommendation, it must forward the
21 remanding settlement money to Plaintiffs' counsel so it is received by
22 the close of business on December 16, 2005.  Any written objections to
23 this Recommendation must be filed with the Court and served on all
24 parties **no later than December 16, 2005**.   The document should be
25 captioned "Objections to Report and Recommendation."  Any reply to the
26 objections shall be filed with the Court and served on all parties **no**
27 **later than December 30, 2005**.  The parties are advised that failure to
28 file objections within the specified time may waive the right to raise

1 those objections on appeal of the Court's order.   <u>Turner v. Duncan</u>, 158

2 F.3d 449, 455 (9th Cir. 1998).

3      **IT IS SO ORDERED**.

4

5 Dated: November 29, 2005

6                                        BARBARA L. MAJOR
                                         United States Magistrate Judge

7 COPY TO:

8 HONORABLE IRMA E. GONZALEZ
  U.S. DISTRICT JUDGE
9
  ALL COUNSEL
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25                                                          05cv0104